# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

PEOPLE'S TRUST FEDERAL CREDIT
UNION,

      Plaintiff/Counter defendant,

vs.                                                                          No. CR 16-0611 JB/SCY

NATIONAL CREDIT UNION ADMINISTRATION
BOARD, in its Capacity as Liquidating Agent for
Chetco Federal Credit Union,

      Defendant/Counterclaimant,

and

ALLIANT CREDIT UNION,
      Defendant/Intervenor.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Defendant's Opposed Motion for Temporary Restraining Order and Preliminary Injunction and Motion to Consolidate Preliminary Injunction Hearing with Trial on the Merits, filed July 15, 2016 (Doc. 6)("Motion"); (ii) the Defendant's Opposed Supplemental Motion for Temporary Restraining Order and Motion for Emergency Hearing, filed August 1, 2016 (Doc. 16)("Supplemental Motion"); and (iii) People's Motion for Leave to Conduct Limited Discovery Addressed to Defendant's Motions Filed on 7/15/16 (Doc. 6) and for Extension of Time to Respond to Those Motions, filed August 1, 2016 (Doc. 18)("Discovery Motion").   The primary issue is whether Defendant/Counterclaimant National Credit Union Administration Board (the "NCUA Board"), in its capacity as liquidating agent for Chetco Federal Credit Union, has demonstrated that it meets rule 65 of the Federal Rules of Civil Procedure's requirements for granting a temporary restraining order.  Because the

NCUA Board has satisfied rule 65's requirements, the Court will grant the application for a TRO restraining Plaintiff People's Trust Federal Credit Union from taking any further actions to settle a foreclosure action involving the NCUA Board's interests without the other interest holders' consent and from arbitrating any disputes until the Court holds a hearing on the preliminary injunction.  Further, because the discovery is important to determining whether the NCUA Board must arbitrate, the Court grants People's Trust's Discovery Motion in part.

## FACTUAL BACKGROUND

As this case involves numerous financial institutions, the Court will first describe the parties before describing their interactions with each other.  It will then explain the loans and contracts over which the parties are litigating.  Finally, the Court describes the state foreclosure proceedings that People's Trust now seeks to settle.

### 1.    The Parties.

People's Trust is a federally chartered and federally insured credit union with its principal place of business in Houston, Texas.  See Complaint for Declaratory Judgment and to Compel Arbitration ¶ 1, at 1, filed June 20, 2016 (Doc. 1)("Complaint").  Until December 28, 2012, Chetco Federal Credit Union ("Chetco CU") was a federally chartered and insured credit union with its principal place of business in Brookings, Oregon.  Complaint ¶ 2, at 2.  Until December, 2012, Chetco CU owned 100% of a credit union service organization, Commercial Lending Services, LLC, an Oregon limited liability company.  Complaint ¶ 3, at 2.  The NCUA Board is a federal entity that Congress authorized to liquidate insolvent credit unions pursuant to 12 U.S.C. § 1787(b)(1)(A).  Complaint ¶ 4, at 2.  Under 12 U.S.C. § 1787, once the NCUA Board declares a credit union insolvent and names itself the liquidating agent, it is vested "with all the right, title, and interest" in the insolvent credit union's operations and "is placed in the shoes of the

board, officials, management, and members."  Motion at 4.

The Saddleback Ranch is real property located near Galisteo, New Mexico.  <u>See</u> Complaint ¶ 6, at 2-3.  Saddleback Ranch Estates, LLC, is a New Mexico limited liability company that Dan Silvestri, a Texas resident, managed.  <u>See</u> Complaint ¶ 6, a 2-3.  Alliant Credit Union became the successor in interest to Continental Federal Credit Union when Continental Airlines and United Airlines merged.  <u>See</u> Motion at 3.

> ### 2.     <u>The People's Trust Loans.</u>

On June 17, 2008, People's Trust originated two loans.  Saddleback Ranch executed a promissory note, which Silvestri guaranteed, to support the first loan for $12,406,250.00, which Saddleback Ranch secured (the "SRE Loan").  Complaint ¶ 6, at 2-3.  <u>See</u> Motion at 2-3.  People's Trust then issued a $3,600,000.00 loan for which William P. Verkin executed a promissory note, which the properties located in New Mexico secured (the "Verkin Loan").  Complaint ¶ 7, at 3.  <u>See</u> Motion at 2-3.

> ### 3.     <u>The Master Loan Participation Agreement.</u>

People's Trust sold ninety percent of its interests in the SRE Loan and the Verkin Loan to Commercial Lending, a credit union service organization ("CUSO"), which was a wholly-owned subsidiary of Chetco CU until December 28, 2012.  <u>See</u> Complaint ¶ 8, at 3-4; Motion ¶ 2, at 3.  People's Trust contracted with Commercial Lending to dole out participation shares among interested credit unions and service the loans.  <u>See</u> Complaint ¶¶ 8-9, at 3-4.  This arrangement between People's Trust and Commercial Lending was effectuated through the Master Loan Participation Agreement dated January 28, 2009 ("Master Agreement").  Complaint ¶¶ 8-9, at 3-4.  <u>See</u> Motion at 3.  The Master Agreement contains an arbitration clause under which Commercial Lending and People's Trust agree to submit all disputes to arbitration with the

American Arbitration Association ("AAA").  Complaint ¶ 10, at 4.

On June 21, 2008, Commercial Lending sold, assigned, and/or transferred its interests in the loans to Chetco CU, but remained the servicer on the loans.  See Motion at 3.  On June 24, 2008, Chetco CU sold a 36.27% interest in the SRE Loan to Continental Federal Credit Union.  See Complaint ¶ 8, at 3-4; Motion at 3.  As the successor in interest to Continental FCU, Alliant CU now holds that 36.27% interest.  Chetco CU retained a 53.73% interest in the SRE Loan and a ninety-percent interest in the Verkin Loan, with People's Trust holding a ten percent interest in both loans.  See Complaint ¶  8, at 3-4; Motion at 3.

4.     **The Insolvency and Foreclosure Proceedings.**

On or around September 23, 2010, the debtor stopped making payments on the SRE Loan.  See Motion at 4.  Similarly, on or around November 1, 2010, the debtor ceased payments on the Verkin Loan.  See Motion at 4.  On September 23, 2011, the NCUA Board named itself Chetco CU's conservator pursuant to its statutory authority under 12 U.S.C. §§ 1783-1786.  See Motion at 4.

After the SRE Loan and the Verkin Loan went into default, People's Trust filed an action on October 11, 2011 in the First Judicial Court, Santa Fe County, New Mexico, Case No. D-0101-CV-2011-003141 (the "Foreclosure Action").  Complaint ¶  11, at 4.  People's Trust sought to foreclose its mortgages and to recover its loans.  See Complaint ¶ 11, at 4.  On December 28, 2012, the NCUA Board named itself Chetco CU's liquidating agent.  See Complaint ¶ 4, at 2; Motion at 4.

5.     **The State Court Litigation and the Settlement Agreement.**

The current litigation involves the underlying state court action.  Accordingly, the Court will describe the state litigation and the proposed settlement agreement.  The Court will then

describe the earlier federal litigation involved in this case.  Since 2012, both Chetco CU's liquidation and the Foreclosure Action have progressed.  In July 2015, as trial approached in the Foreclosure Action, disagreements arose between the interest holders.  Specifically, shortly before the August 17, 2015 trial setting of the Foreclosure Action, People's Trust asked the NCUA Board and Alliant to approve the proposed settlement agreement in the underlying foreclosure action between People's Trust and the debtors in the Foreclosure Action (the "Settlement Agreement").  Complaint ¶¶ 12-13, at 4-5; Motion at 4-5.  Both the NCUA Board and Alliant FCU declined.  See Complaint ¶¶ 12-13, at 4-5; Motion at 4-5.  People's Trust asserted that the Settlement Agreement was "subject either to the approval of the other participants in the loans (NCUAB and Alliant), **or** a determination, in arbitration, that People's has the right, pursuant to the provisions of the Master Agreement, to settle without the approval of the NCUAB and Alliant."  Complaint ¶ 12, at 4 (emphasis added).  See Motion at 5 (stating that "the Settlement Agreement stated that it was contingent upon approval of Liquidating Agent and Alliant, *or* the determination that People's Trust had the authority to enter the agreement and bind Liquidating Agent and Alliant to the Settlement Agreement without their approval")(emphasis in original).

6.      **The AAA and Oregon Proceedings.**

On April 4, 2016, People's Trust filed a demand for arbitration with AAA seeking a declaratory judgment that People's Trust -- without the other interest holders' approval -- has the power and authority to settle the Foreclosure Action and to perform its obligations under the Settlement Agreement.  See Complaint ¶ 13, at 5; Motion at 5-6.  People's Trust also sought a declaration that the Settlement Agreement is reasonable.  See Motion at 5-6.

On April 19, 2016, the NCUA Board filed an objection to the arbitration with the AAA.

See Motion at 6.  It objected to the arbitration on the basis that "there is no contract with an arbitration provision by or among *all* of the parties, none of the relevant contracts provide for an arbitration administered by the AAA Denver, Colorado office, and none set the venue in New Mexico or Arizona."  Motion at 6-7 (emphasis in original).

On April 19, 2016, the NCUA Board informed People's Trust that it must submit the dispute regarding the authority to settle the Foreclosure Action for resolution under the administrative claims process pursuant to the Federal Credit Union Act ("FCUA"), 12 U.S.C. §§ 1751-1795k, and Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA").  In an effort to adjudicate the arbitrability of People's Trust's claims, the NCUA Board filed an action in the United States District Court for the District of Oregon on May 17, 2016.  See Complaint ¶ 14, at 5; Motion at 8.  The NCUA Board sought a temporary restraining order and a preliminary injunction preventing People's Trust from arbitrating the dispute. Complaint ¶ 16, at 6.  The Honorable Michael W. Mosman, Chief Judge for the District of Oregon, dismissed the action for lack of personal jurisdiction on June 13, 2016.  See Complaint ¶ 14, at 5.

**PROCEDURAL BACKGROUND**

After Judge Mosman dismissed the Oregon case, People's Trust preemptively filed an action in the District of New Mexico.  The Court will summarize the initial filings in this case before describing the issues before the Court in this Memorandum Opinion and Order.

1.      **The Complaint and Answer.**

People's Trust filed the Complaint to prevent the NCUA Board from suing People's Trust in the District of New Mexico, and renewing its motions for a TRO and a preliminary injunction.  See Complaint ¶ 14, at 5.  People's Trust asks for a declaratory judgment that "the

AAA arbitration panel, not this Court or any other court or tribunal, including NCUAB's administrative tribunal, is to determine the existence, applicability, and binding effect of the Arbitration Clause in the MLPA."  Complaint ¶ 29, at 10-11.  It further seeks "a judgment compelling arbitration and staying this case pending the outcome of the arbitration."  Complaint ¶ 31, at 11.

The NCUA Board answered on July 15, 2016.  See Defendant's Original Answer and Counterclaim to the Honorable United States District Court Judge, filed July 15, 2016 (Doc. 4)("Answer").  The NCUA Board admitted many of the factual allegations regarding the SRE Loan and the Verkin Loan.  See Answer ¶¶ 1-16, at 1-6.  It denied, however, that "Chetco and CLS are or were one and the same or should be treated as one and the same."  Answer ¶ 22, at 8. Additionally, it filed a counterclaim seeking a TRO and/or preliminary injunction that: (i) restrains People's Trust from taking any further action in AAA case, including but not limited to filing any additional pleadings, motions or papers, selecting Panel members, submitting scheduling orders, or participating in any pre-hearing discovery; and (ii) restrains People's Trust from taking any further steps to consummate any settlement or other resolution of the underlying Foreclosure Action, paying or accepting any settlement proceeds, releasing any claims or causes of action, or forgiving any sums outstanding on the subject loans.  See Answer at 2.  The NCUA Board "also seeks permanent injunctive relief and a declaratory judgment that People's Trust's claims are not arbitrable, and must instead be pursued via the administrative claims process." Answer at 2.

2.    **The Motion and Response**.

The NCUA Board argues that the Master Agreement does not bind the NCUA Board to arbitrate any disputes.  It states that People's Trust has the burden of proof to "present a contract

or agreement containing an arbitration clause" that both People's Trust and the NCUA Board or

Chetco CU signed.  See Motion at 6.   It argues that People's Trust carries a higher burden of

proof than "the run-of-the-mill arbitrability dispute in that under federal law," it is

> not bound to any contract executed by Chetco unless such agreement: (1) is in writing; (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution; (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee; and (4) has been, continuously, from the time of its execution, an official record of the depository institution. *See* 12 U.S.C. § 1823; 12 U.S.C. § 1787(p)(2).

Motion at 6.

Further, the NCUA Board contends that People's Trust must "submit the dispute

regarding authority to settle the Foreclosure Action for resolution under the administrative claims

processed pursuant to the FCUA."  Motion at 7.  The NCUA Board asserts that the FCUA

"requires all claims against the liquidation estate of Chetco CU be filed with Liquidating Agent,

and deprives courts of jurisdiction to hear such claims."  Motion at 7.  It concedes that the FCUA

"does not expressly prohibit arbitration in favor of the administrative claims process," but argues

that "requiring the NCUA to defend claims in arbitration would defeat a primary purpose of the

statute, i.e., centralizing the claims process and preserving the limited assets of the defunct credit

union."  Motion at 7.  The NCUA Board, thus, asks for a TRO and preliminary injunction

restraining People's Trust from taking any further action in the AAA arbitration proceeding.  See

Motion at 9-13.  Additionally, the NCUA Board notes that the Settlement Action may impair the

other interest holders' rights in the SRE Loan and the Verkin Loan.  It therefore asks for a TRO

and preliminary injunction taking any further action to consummate a settlement in the

underlying Foreclosure Action.  See Motion at 9-13.

Further, the NCUA Board explains that, under the FCUA, it is "relieved of the obligation of Rule

65 of the Federal Rules of Civil Procedure to show that the injury, loss, or damage is irreparable and immediate."  Motion at 10.  It contends that it meets all requirements for obtaining a TRO and preliminary injunction.  <u>See</u> Motion at 10-13.  Finally, it seeks a permanent injunction that requires People's Trust to dismiss its arbitration demand, submit the claims it initially asserted in the AAA case to the administrative claims process under the FCUA, and cease any further steps to consummate any settlement in the Foreclosure Action "except trial on the merits as scheduled for October 11, 2016."  Motion at 14.

People's Trust responded on August 5, 2016.  <u>See</u> People's Response to to [sic] Defendant's Opposed Supplemental Motion for Temporary Restraining Order Motion Filed on 8/01/16 (Doc. 16), filed August 5, 2016 (Doc. 23)("Response").  People's Trust argues that the NCUA Board "conceals" material facts, including that the Settlement Agreement requires the parties to ask the state court to stay the action, that the NCUA Board has a copy of the Settlement Agreement, that the parties asked the state court to stay the Foreclosure Action in March, 2016, and that the NCUA Board never before objected to the stay.  <u>See</u> Response at 2.

First, regarding the NCUA Board's request for a TRO and preliminary injunction, People's Trust argues that "large and unrecoverable litigation expenses do not constitute irreparable damage."  Response at 2.  Second, People's Trust contends that "participation agreements," like the Master Agreement, "which the NCUAB itself made or approved . . . are not subject to the administrative claims process."  Response at 3.  It explains that these agreements "are subject to entirely different treatment under the law."  Response at 3 (citing 12 U.S.C. § 1821(d)(2)).  Finally, People's Trust asserts that the NCUA Board agreed to the Master Agreement, so it is bound by the Master Agreement's arbitration clause.  <u>See</u> Response at 4 (citing Declaration of Aaron Racicot, filed August 5, 2016 (Doc. 23-2)("Racicot Aff.")).  It

concludes that the arbitration clause gives the arbitrator "the power to rule on his or her own jurisdiction."  Response at 4.

3.      **The Discovery Request**.

People's Trust requests limited discovery to establish that the NCUA Board is bound by the Master Agreement's arbitration agreement.  See Discovery Motion at 2.  It asks that the requested discovery "be propounded within ten days from the entry of the order granting this motion and with the discovery limited to requests for production, requests for production, requests for admission, and interrogatories."  Discovery Motion at 6.

4.      **The Hearing**.

The Honorable Steven C. Yarbrough, United States Magistrate Judge for the District of New Mexico, held an evidentiary hearing on August 5, 2016.  See Transcript of Hearing (taken August 5, 2016)("Tr.").[1]  The parties had the opportunity to present witness testimony, introduce evidence, and make oral arguments.  See Order of Reference, filed August 4, 2016 (Doc. 20). Judge Yarbrough explained that he would solely conduct the evidentiary hearing, and that the Court would "review the evidence that's presented today, the arguments of counsel, and then [] issue[ a] decision on this case."  Tr. at 2:23-3:2 (Yarbrough).  The parties raised hearsay objections regarding Aaron Racicot's and Kempe Hayes' affidavits, but Judge Yarbrough noted that the rules of evidence were relaxed and admitted the affidavits so the Court could determine their proper weight.  See Tr. at 6:1-8:4 (Burton, Martin, Yarbrough).  After the parties had no more evidence to introduce, they made oral arguments.  See Tr. at 9:24-10:7 (Yarbrough).

The NCUA Board stated that the relief it "requests most imminently today is a temporary restraining order that prevents the arbitration from moving any further than it already has by

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

- 10 -

precluding People's Trust Federal Credit Union from taking any further action in the AAA proceeding." Tr. at 10:20-15 (Martin).  It further seeks to prevent "People's Trust from taking further steps to settle the underlying foreclosure action that is sort of the genesis of all these cases." Tr. at 11:1-4 (Martin).  The NCUA Board asked to set a hearing for a preliminary injunction. <u>See</u> Tr. at 11:5-7 (Martin).  The NCUA Board then explained the case's factual and procedural background.  <u>See</u> Tr. at 11:16-13:12 (Martin).  It emphasized that Commercial Lending "was the original purchaser of the 90 percent interest," but that it "is no longer around, it's not a party to these proceedings, and the only agreement that People's Trust had that contained an arbitration clause was with CLS." Tr. at 13:6-12 (Martin).

Regarding the likelihood of success on the merits, Judge Yarbrough asked whether the Master Agreement's arbitration clause would bind Commercial Lending's successors-in-interest, <u>i.e.</u>, any entity that purchased the loans from Commercial Lending.  <u>See</u> Tr. at 13:22-14:4 (Yarbrough).  The NCUA Board explained that, although the Master Agreement's arbitration agreement might bind an ordinary successor-in-interest, the FCUA "gives the NCUA Board different rules than everybody else." Tr. at 14:5-10 (Martin).  It explained that the "normal rules don't apply"; "what applies under the Federal Credit Union Act is the administrative claims process." Tr. at 14:11-17 (Martin).  The NCUA Board stated that, "because the Federal Credit Union Act was supposed to be this comprehensive scheme to address any claim that was against a defunct credit union, those are not subject to arbitration." Tr. at 15:5-10 (Martin).  The NCUA Board then emphasized the harm that it would suffer if the AAA proceeding continued.  <u>See</u> Tr. at 33:24-34:5 (Martin).  It stated that arbitration would deprive it of using the FCUA's administrative process and that it would have very limited rights of appeal on any judgment made in arbitration. <u>See</u> Tr. at 33:24-34:5 (Martin).

As for rule 65's third requirement, the NCUA Board explained that People's Trust "isn't going to suffer any harm in just having a TRO that puts the arbitration on hold until this court can decide arbitrability gateway questions."   Tr. at 35:24-36:2 (Martin).   It asserted that "People's Trust is the party who first asked this court to make decisions as far as arbitrability by filing this suit."  Tr. at 36:2-5 (Martin).  The NCUA Board stated that it sought only to stall the arbitration to give the Court time to decide the gateway questions first.  See Tr. at 36:9-11 (Martin).  Finally, with respect to rule 65's last factor, the NCUA Board described how granting the TRO would favor the public interest.  See Tr. at 36:16-37:1 (Martin)("This is a public policy decision that Congress has made for a larger benefit than the parties in this room.").

With respect to the relief sought, the NCUA Board clarified that it was not necessarily seeking to prevent any settlement in the Foreclosure Action, but that it instead sought to prevent "People's Trust, who has only a 10 percent ownership interest in these loans," from settling the lawsuit "without the authority of the 90-percent-interest owners" until after the administrative process has taken place.  Tr. at 42:8-20 (Martin).  It explained that the question whether People's Trust has the right to settle "is what's supposed to go into the administrative claims process."  Tr. at 44:15-18 (Martin).  It therefore asked the Court to decide the "initial questions of arbitrability" and then to declare "that the decision of the underlying claims that have been in the arbitration, the substantive claims, . . . . go[] into the administrative claims process."  Tr. at 44:21-45:7 (Martin).

Judge Yarbrough then gave Alliant FCU an opportunity to speak.  See Tr. at 45:15-18 (Yarbrough).   It argued that "there is not an agreement between Alliant and People's that contains an arbitration clause that requires us to arbitrate with People's.  What we have is an agreement with Chetco."  Tr. at 46:3-7 (Keleher).   Alliant FCU stressed that Commercial

Lending and Chetco CU "are not the same." Tr. at 47:8-9 (Keleher). Alliant FCU also stated that it raised all of the arguments that the NCUA Board raised. <u>See</u> Tr. at 47:18-24 (Keleher)(stating that Alliant FCU "coat-tailed on all of those arguments"). Additionally, Alliant FCU noted that "there's really no question amongst all the parties here that we think that it is this court's job to decide whether . . . there is an arbitration agreement." Tr. at 68:1-5 (Keleher). It observed that People's Trust filed the Complaint asking the Court to decide the issue, and the NCUA Board has asked that same question, so Alliant FCU asks that the Court issue "a temporary restraining order to tide us over at least until there is a preliminary injunction hearing, just so we don't have any more harm done in the arbitration." Tr. at 68:5-12 (Keleher).

People's Trust then made its arguments. <u>See</u> Tr. at 52:9 (Burton). It asserted that "Alliant is bound by operation of law to the agreement," and "the NCUA itself has assumed and agreed to be bound by that agreement" by adopting or approving the Master Agreement. Tr. at 52:16-53:4 (Burton). People's Trust explained that the NCUA Board approved that agreement in two letters in 2014. <u>See</u> Tr. at 53:7-13 (Burton). It stated that, by acknowledging the Master Agreement's validity, the NCUA Board is "obligated to perform [the Master Agreement's] provisions, and one of those provisions is an agreement to arbitrate." Tr. at 54:22-25 (Burton). People's Trust further argued that the NCUA Board would not suffer any irreparable harm and that "the defendants have not shown that they are clearly entitled to preliminary relief." Tr. at 61:2-7 (Burton).

The NCUA Board disputed that it adopted or affirmed the contract. <u>See</u> Tr. at 61:13-22 (Martin). It argued, however, that the "assumption of a contract is also a stat[e] law doctrine, and it would similarly be subject to that conflict preemption analysis under the Federal Credit Union Act." Tr. at 61:17-24 (Martin). It concluded that the FCUA would require the dispute

regarding whether the NCUA Board affirmed the contract to be resolved in the administrative claims process.  See Tr. at 61:22-62:2 (Martin).

Regarding its discovery requests, People's Trust asserted that it needs discovery of "Chetco's records and CLS's records" to ascertain whether they are truly one and the same.  Tr. at 56:17-23 (Burton).   People's Trust stated that, because the NCUA Board asserts that Commercial Lending and Chetco CU are not the same entity, it needs discovery to prove that they are the same.  See Tr. at 56:1-8 (Burton).

The NCUA Board argued that there is no reason to have discovery before the Court rules on the TRO.  See Tr. at 62:19-25 (Martin).  It recognized, however, that "if this is going to go to trial on the merits, the Federal Rules of Civil Procedure grant discovery as a matter of course." Tr. at 62:23-25 (Martin).  It further stated that "at the trial-on-the-merits stage or preliminary-injunction stage," some discovery "would be expected" and "would be something that the parties could work through."  Tr. at 63:1-7 (Martin).

## LAW REGARDING REQUESTS FOR TROs

The requirements for the issuance of a temporary restraining order are similar to those for the issuance of a preliminary injunction.   Injunctive relief is considered an "extraordinary remedy," and the movant must demonstrate a "clear and unequivocal right" to have a request granted.  Greater Yellowstone Coal. v. Flowers, 321 F.3d 1250, 1256 (10th Cir. 2003).   In determining whether to grant injunctive relief, courts consider the following four factors: (i) whether the moving party will suffer irreparable injury unless the injunction issues; (ii) whether there is a substantial likelihood that the moving party will eventually prevail on the merits; (iii) whether the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; and (iv) whether the injunction, if issued, would not be

adverse to the public interest.  See Fed. Lands Legal Consortium ex rel. Robart Estate v. United States, 195 F.3d 1190, 1194 (10th Cir. 1999); Resolution Trust Corp. v. Cruce, 972 F.2d 1195, 1198 (10th Cir. 1992).  If a movant can show that the first, third, and fourth factors "tip strongly in his favor, the test is modified," and the moving party "may meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation."  Okla. ex rel. OK Tax Comm'n v. Int'l Registration Plan, Inc., 455 F.3d 1107, 1113 (10th Cir. 2006).  The Tenth Circuit has stated that "in cases where the requested preliminary injunction alters the status quo . . . the movant will ordinarily find it difficult to meet its heavy burden of showing that the four factors, on balance, weigh heavily and compellingly in its favor, without showing a substantial likelihood of success on the merits."  Herrera v. Santa Fe Pub. Schs., 2011 WL 2433050, at *4 (D.N.M. May 20, 2011)(Browning, J.)(quoting Kikumura v. Hurley, 242 F.3d 950, 955 (10th Cir. 2001)).  See Braverman v. New Mexico, 2012 WL 5378290, at *21 (D.N.M. Sept. 26, 2012).

## LAW REGARDING THE FCUA

The FCUA was enacted to establish a system of credit unions to facilitate stabilization of the nation's credit structure and to achieve increased availability of loans.  See 12 U.S.C. §§ 1751-1795k.  The FCUA's § 1787 governs the liquidation of federally insured credit unions and gives the NCUA Board the authority to administer all claims of defunct federal credit unions. See 12 U.S.C. § 1787(b)(3).  Section 1787 provides an administrative claim procedure that serves as a jurisdictional prerequisite to litigation.  See 12 U.S.C. § 1787. Pursuant to this administrative scheme, a prospective plaintiff wishing to assert a claim against the assets of a failed credit union must submit an administrative claim within a defined period.  See 12 U.S.C. §

1787(b)(5)-(11).  A prospective plaintiff's failure to follow these procedures divests the district court of jurisdiction over the prospective claim.  See 12 U.S.C. § 1751(b)(13)(D); Acciard v. Whitney, No. 2:07-CV-00476-FTM-36, 2011 WL 4552564, at *3 (M.D. Fla. Sept. 30, 2011)(Honeywell, J.).

After notice to creditors and receipt of claims, the NCUA Board must determine whether to allow or disallow each claim.  See 12 U.S.C. § 1787(b)(5)(A)(i).  Thereafter, the NCUA Board is statutorily obligated to provide a "notice of disallowance" in the event that it denies a particular claim.  12 U.S.C. § 1787(b)(5)(iv).  The notice must contain a statement of each reason for the disallowance, as well as the procedures available for obtaining agency review or judicial determination of the claim.  See 12 U.S.C. § 1787(b)(5)(iv).  Congress has expressly limited judicial review of creditor claims.  The FCUA provides as follows:

> (D) Limitation on judicial review
>
> > Except as otherwise provided in this subsection, no court shall have jurisdiction over --
> >
> > > (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any credit union for which the Board has been appointed liquidating agent, including assets which the Board may acquire from itself as such liquidating agent; or
> > >
> > > (ii) any claim relating to any act or omission of such credit union or the Board as liquidating agent.
>
> The review process afforded to claims reviewed by plaintiff consists of the following,

(6) Provision for agency review or judicial determination of claims

> (A) In general
>
> > Before the end of the 60–day period beginning on the earlier of --

- 16 -

(i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a credit union for which the Board is liquidating agent; or

(ii) the date on any notice of disallowance of such claim pursuant to paragraph 5(A)(i),

the claimant may request administrative review of the claim . . . or file suit on such claim . . . in the district or territorial court of the United States for the district within which the credit union's principal place of business is located . . . .

12 U.S.C. § 1787(b)(6)(A).

## ANALYSIS

While the Court has only had the case for seven days, and has not had time to thoroughly consider all of the legal issues, the Court concludes that the NCUA Board will likely prevail on the merits of its Counterclaim.  In this overlap of congressional statutory direction, the Court tentatively concludes that it shall strictly and narrowly construe any delegation that the NCUA Board has inherited to arbitrate disputes.  Moreover, the Court reads the Master Agreement to require People's Trust to submit its claims to the NCUA Board's claim process before it can require the NCUA Board to arbitrate or to litigate against the NCUA Board.  The NCUA Board thus satisfies rule 65's requirements.

## I.    THE NCUA BOARD WILL SUFFER IRREPARABLE HARM UNLESS THE TRO ISSUES.

Rule 65's first requirement is that the movant show that it will suffer irreparable injury without the TRO.  See Fed. R. Civ. P. 65.  Neither side has requested economic damages.  The relief requested is primarily equitable in nature.  Notably, however, the NCUA Board is relieved of the requirement to show that the injury is irreparable and immediate.  See 12 U.S.C. § 1787(b)(2)(H)(stating that rule 65 "shall apply . . . without regard to the requirement of such rule that the applicant show that the injury, loss, or damage is irreparable and immediate").

- 17 -

In any case, without the relief that the NCUA Board seeks, the NCUA Board will suffer three categories of immediate and irreparable injury, loss, or damage:  (i) the NCUA Board will be deprived of its rights to consider, evaluate, and decide the administrative claims of People's Trust under the statutory and regulatory framework in the FCUA and in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. 101-73, 103 Stat. 183 (1989); (ii) the NCUA Board will incur unnecessary legal expenses if it is required to defend against People's Trust through arbitration instead of through the congressionally established administrative claims progress; and (iii) the NCUA Board may be prejudiced in its ability to seek maximum recovery on the loans by People Trust's unilateral settlement and/or resolution of the underlying loans. See Motion at 10; Verification and Affidavit of Kempe Hayes ¶ 16, at 4 (executed July 15, 2016), filed July 15, 2016 (Doc. 6-1).

The NCUA Board demonstrated that the arbitration proceeding is moving along rapidly. See Tr. at 25:1-13 (Martin).  It argues that being "subject to an arbitration with exceedingly limited rights of appeal" without consent when federal statutes declare that "the liquidating agent doesn't have to arbitrate these claims" exposes the NCUA Board to "substantial harm."  Tr. at 25:19-24 (Martin).  The Court agrees.  When Congress has provided that the NCUA Board may use the FCUA's administrative claims process, forcing the NCUA Board to arbitrate with limited appeal rights has the potential to cause harm.  See Nat'l Credit Union Admin. Bd. v. Lormet Cmty. Fed. Credit Union, No. 1:10 CV 1964, 2010 WL 4806794, at *7 (N.D. Ohio Nov. 18, 2010)(Gaughan, J.)("[T]he harm plaintiff will suffer consists of having to proceed with the arbitration in the first place.").  The NCUA Board "will be required to expend precious resources litigating outside of the congressionally established administrative claims process."  Nat'l Credit Union Admin. Bd. v. Lormet Cmty. Fed. Credit Union, 2010 WL 4806794, at *7.  Although this

harm may not be irreparable, the NCUA Board need not make such a showing.

## II.   THERE IS A SUBSTANTIAL LIKELIHOOD THAT THE NCUA BOARD WILL PREVAIL ON THE MERITS.

The Court concludes that the NCUA Board has a substantial likelihood of success on the merits of its claims for declaratory relief and application for a permanent injunction.  First, the NCUA Board shows that the Master Agreement does not likely bind the NCUA Board to arbitration, because it was not a party to the agreement.  Furthermore, the NCUA Board has shown a high likelihood of success on its claim that People's Trust must use the administrative claims process before pursuing arbitration.  Congress designed the FCUA to protect all creditors. See 12 U.S.C. §§ 1751-1795k.  Accordingly, the FCUA requires claimants of the failed credit union to submit an administrative claim within a defined period.  See 12 U.S.C. § 1787(b)(5)-(11).  A prospective plaintiff's failure to follow these procedures divests the district court of jurisdiction over the prospective claim.  See 12 U.S.C. § 1751(b)(13)(D); Acciard v. Whitney, No. 2:07-CV-00476-FTM-36, 2011 WL 4552564, at *3 (M.D. Fla. Sept. 30, 2011).  Allowing People's Trust to avoid the administrative scheme and instead pursue arbitration might individually benefit People's Trust and incidentally harm the other creditors who filed claims under the FCUA's administrative process.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., mandates that agreements to arbitrate be enforced unless "overridden by a contrary congressional command." Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220, 226 (1987).  There is a "liberal federal policy favoring arbitration agreements," such that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).  A party seeking to avoid arbitration thus bears the burden of demonstrating a contrary congressional command using a statute's text, its legislative history, or

identifying an "inherent conflict between arbitration and the statute's underlying purposes." Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. at 227.  See Wiand v. Schneiderman, 778 F.3d 917, 922 (11th Cir. 2015).  Although the FCUA contains an administrative claims process and limitation on judicial review, it does not expressly prohibit arbitration.  Nevertheless, other courts have found inherent conflicts between arbitration and the FCUA's statutory scheme, which aims to streamline the distribution of assets.  See Wiand v. Schneiderman, 778 F.3d at 922 (citing Nat'l Credit Union Admin. Bd. v. Lormet Comm. Fed. Credit Union, 2010 WL 4806794, at *4 (N.D. Ohio Nov. 18, 2010)).

The Honorable Patricia A. Gaughan, United States District Judge for the Northern District of Ohio, concluded that

> there is an inherent conflict between the FAA and the FCUA.  As plaintiff points out, the FCUA is a comprehensive legislative scheme that is designed to protect creditors of defunct federal credit unions.  The FCUA contains a detailed administrative claims procedure, pursuant to which all creditors must submit claims.  The purpose of the statute is to afford plaintiff, an arm of the executive branch of the government, with the ability to assess and quickly disburse the funds due to creditors of a defunct federal credit union.  To that end, the statute precludes judicial review until after the administrative claims procedure is complete.  Presumably, this enables plaintiff to assess the credit union's assets and fairly distribute any existing assets to the creditors.  At the same time, the administrative claims process provides a centralized system for addressing claims so that whatever assets may remain can be preserved for the benefit of all creditors.  The Court finds an inherent conflict in this statutory scheme which operates to benefit all creditors, with the FAA which would essentially serve to place the rights of creditors who have agreements containing arbitration provisions on different footing than those unable to rely on arbitration provisions.  In addition, requiring plaintiff to defend creditor claims in arbitration would defeat a primary purpose of the statute, *i.e.*, centralizing the claims process and preserving the limited assets of the defunct credit union.  Although it appears that defendant is the only party seeking arbitration, it is possible that many creditors of a federal credit union could pursue arbitration.  The Court finds that Congress's enactment of a statute with a comprehensive administrative claims process, together with a limitation on judicial review, inherently conflicts with the FAA.  Accordingly, claims falling within the purview of the FCUA may not be arbitrated.

Nat'l Credit Union Admin. Bd. v. Lormet Cmty. Fed. Credit Union, 2010 WL 4806794, at *4. See Multibank 2010-1 SFR Venture LLC v. Saunders, No. 2:11-CV-1245 JCM (CWH), 2011 WL 5546960 (D. Nev. Nov. 14, 2011)(Mahan, J.)(enjoining arbitration purchaser of failed bank's assets where the plaintiffs had not first exhausted their administrative remedies pursuant to the FIRREA, which has limitations on judicial review nearly identical to those of the FCUA).

The United States Court of Appeals for the Eleventh Circuit similarly noted that the FCUA establishes an administrative claims process "by which one entity's assets may be distributed to a myriad of creditors who have a legitimate claim to them." Wiand v. Schneiderman, 778 F.3d at 923. Congress "establish[ed] a special method by which that person or entity is to" manage the asset distribution of a defunct credit union. Wiand v. Schneiderman, 778 F.3d at 923. Other courts have similarly noted that the FCUA "plainly states that *any* claim that asserts a right to the asset of a failed credit union or challenges the Board's acts or omissions as liquidating agent is subject to exhaustion." Lillis v. Nat'l Credit Onion Admin. Bd., No. 1:14-CV-867-CL, 2015 WL 134231, at *2 (D. Or. Jan. 9, 2015)(Panner, J.)(emphasis in original). See McCarthy v. FDIC, 348 F.3d 1075, 1077 (9th Cir. 2003)(analyzing the FIRREA's identical language regarding claims against the Federal Deposit Insurance Corporation ("FDIC")). The Honorable Owen M. Panner, United States District Judge for the District of Oregon, concluded that 12 U.S.C. § 1787(b) not only prevents judicial review of a creditor's claims against the defunct credit union, but also "explicitly bars judicial review of unexhausted claims against the Board for its actions as liquidating agent." Lillis v. Nat'l Credit Onion Admin. Bd., 2015 WL 134231, at *2. Although People's Trust does not pursue judicial review, it seeks to resolve its claims against the NCUA Board through arbitration without having used the FCUA's administrative claims process. The NCUA Board therefore shows a high likelihood

of establishing that this administrative process inherently conflicts with arbitration.

People's Trust contends that the NCUA Board may not accept the benefits of the Master Agreement, while repudiating the arbitration clause.  <u>See</u> Response at 4 (citing Racicot Aff. ¶ 4, at 2, which notes that the "NCUAB pointed out that this was required by the Master Loan Participation Agreement").  The NCUA Board stated that the FCUA gives the NCUA Board, as liquidating agent, "significant authority to pick and choose what provisions of what contracts it will and will not be bound by."  Tr. at 20:16-21 (Martin).  It stated that, if conflicts arise between the FCUA and state law doctrine regarding arbitrability, "to the extent there is a conflict, federal preemption requires that the Federal Credit Union Act provision trump state law."  Tr. at 20:24-21:2 (Martin).  Given Congress' enactment of a comprehensive administrative process to administer the funds of defunct credit unions, the NCUA Board shows a high likelihood of succeeding on their claim that People's Trust must pursue the administrative claims process.  Moreover, granting the TRO will maintain the status quo, as no decision has been made by either the AAA or the state court.

## III.   THE THREATENED INJURY TO THE NCUA BOARD OUTWEIGHS ANY HARM THE PROPOSED TRO MAY CAUSE PEOPLE'S TRUST.

Considering the balances of hardship, remedy in equity is warranted.  The Court is reluctant to permit a ten-percent interest holder to avoid the congressionally enacted administrative claims process and settle the underlying dispute without the majority interest holder's consent.  Allowing the arbitration to proceed will result in unnecessary arbitration fees.  It will also deprive the NCUA Board from using the FCUA's administrative process.  In contrast, the granting of a TRO will not result in any great harm to People's Trust.  The administrative claim process, which recognizes claims either to be allowed or disallowed within 180 days, may prove to be a faster or more efficient result that the AAA proceeding that People's Trust has

invoked.  See 12 U.S.C. § 1787(b)(5).  Moreover, the Court is not issuing a permanent injunction; it is merely granting a TRO.  Accordingly, any damage People's Trust may suffer as a result of the imposition of a TRO is outweighed by the injury that the NCUA Board will suffer if the arbitration proceeds.

## IV.  THE TRO WILL NOT BE CONTRARY TO THE PUBLIC INTEREST.

The relief that the NCAU Board requests will serve the public interest.  Congress has, by adopting the FCUA, identified this public interest.  Congress has expressed a preference for efficiently resolving claims in a centralized manner so as to conserve the assets of a credit union to the general advantage of all that credit union's creditors.  See Nat'l Credit Union Admin. Bd. v. Lormet Cmty. Fed. Credit Union, 2010 WL 4806794, at *7.

## V.  THE COURT GRANTS PEOPLE'S TRUST'S DISCOVERY REQUEST IN PART.

People's Trust asserts that it "needs discovery to find out the basis for the NCUAB's" assertion that the Master Agreement does not bind the NCUA Board, because the evidence necessary to demonstrate that the Master Agreement binds the NCUA Board is "necessarily within the peculiar province of the NCUAB."  Discovery Motion at 10.  People's Trust asks for "ten days in which to propound discovery requests to the NCUAB."  Discovery Motion at 10.  It further asks the Court to "grant People's an extension of time in which to respond to the NCUAB Motions."  Discovery Motion at 10.  Because People's Trust has already filed a Response to the Motion, the Court will not grant the request for "21 days following service of the responses to the discovery requests" so that People's Trust can respond to the Motion and the Supplemental Motion.  Discovery Motion at 10-11.  The Court will, however, grant People's Trust's request to obtain limited and relevant discovery before the Court holds a hearing on the preliminary injunction.

The NCUA Board possesses the documents that establish whether Commercial Lending and Chetco CU are the same entity.  Determining whether Commercial Lending and Chetco CU are the same entity is important and relevant to the preliminary injunction determination.  See Dimension Data North Am., Inc. v. NetStar-1, Inc., 226 F.R.D. 528, 532 (E.D.N.C. 2005)("An expedited discovery request could be more narrowly tailored to focus on information believed to be probative to the preliminary injunction analysis.").  People's Trust's discovery requests are narrowly-tailored to asking for information regarding Commercial Lending and Chetco CU.  See KBG Holding Corp. v. Union Bank, 56 F. App'x 111, 114 (4th Cir. 2003)("The parties engaged in expedited discovery in preparation for the . . . hearing on the competing motions for preliminary injunction."); CIENA Corp. v. Jarrard, 203 F.3d 312, 314 (4th Cir. 2000)(remanding to give the defendant an opportunity to conduct expedited discovery in advance of the district court's reconsideration of preliminary injunction motion).  Without this information, People's Trust may be irreparably harmed in its ability to prevent a preliminary injunction and to continue the Foreclosure Action and arbitration.  Furthermore, the NCUA Board concedes that, at the preliminary injunction stage, some discovery "would be expected" and "would be something that the parties could work through."  Tr. at 63:1-7 (Martin).

The Court notes that People's Trust has had time to prepare its discovery requests.  It should do so immediately rather than waiting ten days.  Given the NCUA Board's position in the case thus far, it expects that the NCUA Board will respond to those discovery requests quickly.  Accordingly, the Court will schedule the hearing on the preliminary injunction for August 23, 2016 at 8:30 a.m.  If disputes arise regarding the time it takes to respond to People's Trust's discovery requests, the Court will work with the parties on the discovery issues, and, if need be, postpone the hearing.

**IT IS ORDERED** that:  (i) Plaintiff People's Trust Federal Credit must not take any further action in AAA Case No. 01-16-0001-0793, including but not limited to filing any additional pleadings, motions or papers, selecting Panel members, submitting scheduling orders, or participating in any pre-hearings, discovery, secure and except notifying this AAA of this order, until after the Court holds a preliminary injunction hearing on August 23, 2016 at 8:30 a.m.; (ii) People's Trust must not take any further steps to consummate any settlement or other resolution for the underlying foreclosure proceeding Cause No. D-0101-CV-2011-03141, in the First Judicial District Court of Santa Fe County, New Mexico, paying or accepting any settlement proceeds, releasing any claims or causes of action, or forgoing any sums -- principal, interest, penalties, fees, or otherwise -- outstanding on the suberized loans, without the other interest holders' consent until after the Court holds a preliminary injunction hearing on August 23, 2016 at 8:30 a.m.; and (iii) People's Trust may obtain the limited discovery it requests before the preliminary injunction hearing on August 23, 2016 at 8:30 a.m.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John B. Burton
Charles Hughson
Rodey, Dickson, Sloan, Akin & Robb, P.A.
Santa Fe, New Mexico

-- and --

Dennis E. Jontz
Ryan M. Walters
Lewis Roca Rotheberber Christie, LLP
Albuquerque, New Mexico

*Attorneys for Plaintiff/Counter defendant*

Mark A. Glenn
Moses, Dunn, Farmer & Tuthill, P.C.
Albuquerque, New Mexico

-- and --

Simon W. Hendershot, III
Christy L. Martin
Benjamin L. Hisey
Kerr, Hendershot & Cannon, P.C.
Houston, Texas

*Attorneys for Defendants/Counterclaimant*