# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

PEOPLE'S TRUST FEDERAL CREDIT
UNION,

      Plaintiff/Counterdefendant,

vs.                                                              No. CIV 16-0611 JB\SCY

NATIONAL CREDIT UNION ADMINISTRATION
BOARD, in its Capacity as Liquidating Agent for
Chetco Federal Credit Union,

      Defendant/Counterclaimant,

and

ALLIANT CREDIT UNION,
      Defendant/Intervenor.

## <u>MEMORANDUM OPINION</u>[1]

**THIS MATTER** comes before the Court on the Plaintiff People's Trust Federal Credit

Union's and Defendant National Credit Union Administration Board's Motion. The Court held a

hearing on June 26, 2017. The primary issues are: (i) whether the Court should vacate the

preliminary injunction hearing set for June 28, 2017, to allow for additional settlement talks;

(ii) whether the Court should stay further proceedings in this case through the date of the new

preliminary injunction hearing; and (iii) whether the Court should continue the temporary

restraining order ("TRO") issued, <u>see</u> Memorandum Opinion and Order at 26, 2016 WL

---

[1]This Memorandum Opinion follows the Order, filed March 31, 2018
(Doc. 59)("Order"), disposing of the requests in the Joint Emergency Motion to Extend Stay of
Case and to Continue Temporary Restraining Orders and Hearing on Preliminary Injunction,
filed June 23, 2017 (Doc. 51)("Motion"). As the Court indicated in the Order, the Court will in
this Memorandum Opinion more fully detail its rationale for its decision.

4491635, at *12, filed August 8, 2016 (Doc. 26)("MOO"), until after the Court holds the preliminary injunction hearing. The Court recorded its decision in this matter in the Order. As the Court promised in the Order, the Court now issues a Memorandum Opinion to explain its order. The Court denied the request to extend the stay, because, at the hearing, the intervenor -- Alliant Credit Union ("Alliant CU") -- did not agree to extend the stay, and, under rules 16 and 65 of the Federal Rules of Civil Procedure, Alliant CU has a right to have a preliminary injunction hearing or to refuse to modify a scheduling deadline. Accordingly, the Court did not vacate the scheduled preliminary injunction hearing and also denied the request to continue the TRO for largely the same reasons. The Court thus denied the Motion.

## FACTUAL BACKGROUND

The Court described the facts leading to this case and the early procedural history in the MOO. See Moo at 2-14, 2-16 WL 4491635, at *1-5. The case involves several financial institutions, loans, and contracts, which the Court described in detail in the MOO. The Court, accordingly, incorporates the "Factual Background" and part of the "Procedural Background" from the MOO below.

As this case involves numerous financial institutions, the Court will first describe the parties before describing their interactions with each other. It will then explain the loans and contracts over which the parties are litigating. Finally, the Court describes the state foreclosure proceedings that People's Trust now seeks to settle.

### 1.    The Parties.

People's Trust is a federally chartered and federally insured credit union with its principal place of business in Houston, Texas. See Complaint for Declaratory Judgment and to Compel

Arbitration ¶ 1, at 1, filed June 20, 2016 (Doc. 1)("Complaint"). Until December 28, 2012, Chetco Federal Credit Union ("Chetco CU") was a federally chartered and insured credit union with its principal place of business in Brookings, Oregon. See Complaint ¶ 2, at 2. Until December, 2012, Chetco CU owned one-hundred percent of a credit union service organization, Commercial Lending Services, LLC, an Oregon limited liability company. See Complaint ¶ 3, at 2. The National Credit Union Administration ("NCUA") Board is a federal entity that Congress authorizes pursuant to 12 U.S.C. § 1787(b)(1)(A) to liquidate insolvent credit unions. See Complaint ¶ 4, at 2. Under 12 U.S.C. § 1787, once the NCUA Board declares a credit union insolvent and names itself the liquidating agent, it is vested "with all the right, title, and interest" in the insolvent credit union's operations, and "is placed in the shoes of the board, officials, management, and members." Defendant's Opposed Motion for Temporary Restraining Order and Preliminary Injunction and Motion to Consolidate Preliminary Injunction Hearing with Trial on the Merits, at 4, filed July 15, 2016 (Doc. 6)("Motion for TRO").

The Saddleback Ranch is real property located near Galisteo, New Mexico. See Complaint ¶ 6, at 2-3. Saddleback Ranch Estates, LLC, is a New Mexico limited liability company that Dan Silvestri, a Texas resident, managed. See Complaint ¶ 6, a 2-3. Alliant CU became the successor in interest to Continental Federal Credit Union ("Continental CU") when Continental Airlines and United Airlines merged. See Motion for TRO at 3.

2. **The People's Trust Loans.**

On June 17, 2008, People's Trust originated two loans. Saddleback Ranch executed a promissory note, which Silvestri guaranteed, to support the first loan for $12,406,250.00, which Saddleback Ranch secured (the "SRE Loan"). Complaint ¶ 6, at 2-3. See Motion for TRO at 2-

3.   People's Trust then issued a $3,600,000.00 loan for which William P. Verkin executed a promissory note, which the properties located in New Mexico secured (the "Verkin Loan"). Complaint ¶ 7, at 3.  <u>See</u> Motion for TRO at 2-3.

        **3.**          <u>**The Master Loan Participation Agreement.**</u>

People's Trust sold ninety percent of its interests in the SRE Loan and the Verkin Loan to Commercial Lending, a CU service organization ("CUSO"), which was a wholly owned subsidiary of Chetco CU until December 28, 2012.  <u>See</u> Complaint ¶ 8, at 3-4; Motion for TRO ¶ 2, at 3.  People's Trust contracted with Commercial Lending to dole out participation shares among interested CUs and service the loans.  <u>See</u> Complaint ¶¶ 8-9, at 3-4.  This arrangement between Commercial Lending and People's Trust was effectuated through the Master Loan Participation Agreement dated January 28, 2009 ("Master Agreement").  <u>See</u> Complaint ¶¶ 8-9, at 3-4.  <u>See</u> Motion for TRO at 3.  The Master Agreement contains an arbitration clause under which Commercial Lending and People's Trust agree to submit all disputes to arbitration with the American Arbitration Association ("AAA").  <u>See</u> Complaint ¶ 10, at 4.

On June 21, 2008, Commercial Lending sold, assigned, and/or transferred its interests in the loans to Chetco CU, but remained the servicer on the loans.  <u>See</u> Motion for TRO at 3.  On June 24, 2008, Chetco CU sold a 36.27% interest in the SRE Loan to Continental CU.  <u>See</u> Complaint ¶ 8, at 3-4; Motion for TRO at 3.  As the successor in interest to Continental CU, Alliant CU now holds that 36.27% interest.  <u>See</u> Motion for TRO at 3.  Chetco CU retains a 53.73% interest in the SRE Loan and a ninety-percent interest in the Verkin Loan, with People's Trust holding a ten-percent interest in both loans.  <u>See</u> Complaint ¶ 8, at 3-4; Motion for TRO at 3.

4.    **The Insolvency and Foreclosure Proceedings**.

On or around September 23, 2010, the debtor stopped making payments on the SRE Loan.  See Motion for TRO at 4.  Similarly, on or around November 1, 2010, the debtor ceased payments on the Verkin Loan.  See Motion for TRO at 4.  On September 23, 2011, the NCUA Board named itself Chetco CU's conservator pursuant to its statutory authority under 12 U.S.C. § § 1783-86.  See Motion for TRO at 4.

After the SRE Loan and the Verkin Loan went into default, People's Trust filed an action on October 11, 2011 in the First Judicial Court, Santa Fe County, New Mexico.  Case No. D-0101-CV-2011-003141 (the "Foreclosure Action").  See Complaint ¶ 11, at 4.  People's Trust sought to foreclose its mortgages and to recover its loans.  See Complaint ¶ 11, at 4.  On December 28, 2012, the NCUA Board named itself Chetco CU's liquidating agent.  See Complaint ¶ 4, at 2; Motion for TRO at 4.

5.    **The State Court Litigation and the Settlement Agreement**.

The current litigation involves the underlying state court action.  Accordingly, the Court will describe the state litigation and the proposed settlement agreement.  The Court will then describe the earlier federal litigation involved in this case.  Since 2012, both Chetco CU's liquidation and the Foreclosure Action have progressed.  In July, 2015, as trial approached in the Foreclosure Action, disagreements arose between the interest holders.  Specifically, shortly before the August 17, 2015, trial setting of the Foreclosure Action, People's Trust asked the NCUA Board and Alliant CU to approve the proposed settlement agreement in the underlying foreclosure action between People's Trust and the debtors in the Foreclosure Action (the "Settlement Agreement").  See Complaint ¶¶ 12-13, at 4-5.  See Motion for TRO at 4-5.  Both

the NCUA Board and Alliant CU declined.  See Complaint ¶¶ 12-13, at 4-5; Motion for TRO at 4-5.  People's Trust asserted that the Settlement Agreement was "subject either to the approval of the other participants in the loans (NCUA Board and Alliant), **or** a determination, in arbitration, that People's has the right, pursuant to the provisions of the Master Agreement, to settle without the approval of the NCUA Board and Alliant."  Complaint ¶ 12, at 4 (emphasis added).  See Motion for TRO at 5 (noting that "the Settlement Agreement stated that it was contingent upon approval of Liquidating Agent and Alliant, *or* the determination that People's Trust had the authority to enter the agreement and bind Liquidating Agent and Alliant to the Settlement Agreement without their approval"(emphasis in original)).

6.      **The AAA and Oregon Proceedings.**

On April 4, 2016, People's Trust filed a demand for arbitration with AAA seeking a declaratory judgment that People's Trust -- without the other interest holders' approval -- has the power and authority to settle the Foreclosure Action and to perform its obligations under the Settlement Agreement.  See Complaint ¶ 13, at 5; Motion for TRO at 5-6.  People's Trust also sought a declaration that the Settlement Agreement is reasonable.  See Motion for TRO at 5-6.

On April 19, 2016, the NCUA Board filed an objection to the arbitration with the AAA.  See Motion for TRO at 6.  It objected to the arbitration on the basis that "there is no contract with an arbitration provision by or among *all* of the parties, none of the relevant contracts provide for an arbitration administered by the AAA Denver, Colorado office, and none set the venue in New Mexico or Arizona."  Motion for TRO at 6-7 (emphasis in original).

On April 19, 2016, the NCUA Board informed People's Trust that it must submit the dispute regarding the authority to settle the Foreclosure Action for resolution under the

administrative claims process pursuant to the Federal Credit Union Act, 12 U.S.C. § § 1751-1795k ("FCUA"), and Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § § 506, 1422a, 1422b, 1441a, 1441a-1, 1441a-2, 1441b, 1462a, 1463, 1468a to 1468c, 1790a to 1790c, 1831e to 1831k, 1833a to 1833c, 1833e, 2906, 3309, 3310, 3331 to 3356; 18 U.S.C. § § 3293, 3322; 31 USCA § 309 ("FIRREA"). In an effort to adjudicate the arbitrability of People's Trust's claims, the NCUA Board filed an action in the United States District Court for the District of Oregon on May 17, 2016. See Complaint ¶ 14, at 5; Motion for TRO at 8. The NCUA Board sought a temporary restraining order and a preliminary injunction preventing People's Trust from arbitrating the dispute. See Complaint ¶ 16, at 6. The Honorable Michael W. Mosman, Chief Judge for the District of Oregon, dismissed the action for lack of personal jurisdiction on June 13, 2016. See Complaint ¶ 14, at 5.

## PROCEDURAL BACKGROUND

After Judge Mosman dismissed the Oregon case, People's Trust preemptively filed an action in the United States District Court for the District of New Mexico. The Court will summarize the initial filings in this case and leading to the TRO as background for the issues raised in this Memorandum Opinion. The Court will then discuss the Motion and describe the issues before the Court in this matter.

1.      **The Complaint and Answer**.

People's Trust filed the Complaint to prevent the NCUA Board from suing People's Trust in the District of New Mexico, and renewing its motions for a TRO and a preliminary injunction. See Complaint ¶ 14, at 5. People's Trust asks for a declaratory judgment that "the AAA arbitration panel, not this Court or any other court or tribunal, including NCUA BOARD's

administrative tribunal, is to determine the existence, applicability, and binding effect of the Arbitration Clause." Complaint ¶ 29, at 10-11. It further seeks "a judgment compelling arbitration and staying this case pending the outcome of the arbitration." Complaint ¶ 31, at 11.

The NCUA Board answered on July 15, 2016. <u>See</u> Defendant's Original Answer and Counterclaim to the Honorable United States District Court Judge, filed July 15, 2016 (Doc. 4)("Answer"). The NCUA Board admitted many of the factual allegations regarding the SRE Loan and the Verkin Loan. <u>See</u> Answer ¶¶ 1-16, at 1-6. It denied, however, that "Chetco and CLS are or were one and the same or should be treated as one and the same." Answer ¶ 22, at 8. Additionally, it filed a counterclaim seeking a TRO and/or preliminary injunction that: (i) restrains People's Trust from taking any further action in the AAA case, including but not limited to filing any additional pleadings, motions or papers, selecting Panel members, submitting scheduling orders, or participating in any pre-hearing discovery; and (ii) restrains People's Trust from taking any further steps to consummate any settlement or other resolution of the underlying Foreclosure Action, paying or accepting any settlement proceeds, releasing any claims or causes of action, or forgiving any sums outstanding on the subject loans. <u>See</u> Answer at 2. The NCUA Board "also seeks permanent injunctive relief and a declaratory judgment that People's Trust's claims are not arbitrable, and must instead be pursued via the administrative claims process." Answer at 2.

**2.     The TRO.**

In the Motion for TRO and the Defendant's Opposed Supplemental Motion for Temporary Restraining Order and Motion for Emergency Hearing, filed August 1, 2016 (Doc. 16), the NCUA Board asks for a TRO and a preliminary injunction preventing People's

Trust from taking any further actions in the AAA arbitration proceeding or steps to advance a settlement in the Foreclosure Action. <u>See</u> Motion at 9-13. On July 16, 2016, this Court granted the TRO, and the Court scheduled a preliminary injunction hearing for August 23, 2016. <u>See</u> MOO at 25, 2016 WL 4491635, at *12. The Court initially continued the TRO and the hearing for the parties to continue discovery in August, 2016. <u>See</u> Joint Motion to Continue Temporary Restraining Order and Hearing on Preliminary Injunction at 1, filed on August 19, 2016 (Doc. 32); Order Continuing Temporary Restraining Orders and Hearing on Preliminary Injunction at 1, filed August 22, 2016 (Doc. 33). After the parties commenced settlement discussions, the parties and the Court repeatedly stayed the case, and continued the TRO and the hearing. <u>See</u> Joint Motion to Stay Case and to Continue Temporary Restraining Orders and Hearing on Preliminary Injunction at 1, filed September 2, 2016 (Doc. 40); Order staying Case and Continuing Temporary Restraining Orders and Hearing on Preliminary Injunction at 1, filed September 9, 2016 (Doc. 41); Order Staying Case and Continuing Temporary Restraining Orders and Hearing on Preliminary Injunction at 1, filed November 1, 2016 (Doc. 44); Joint Motion to Stay Case and to Continue Temporary Restraining Orders and Hearing on Preliminary Injunction at 1, filed January 1, 2016 (Doc. 45), Order Staying Case and Continuing Temporary Restraining Orders and Hearing on Preliminary Injunction at 1, filed January 9, 2017 (Doc. 46); Joint Motion to Stay Case and to Continue Temporary Restraining Orders and Hearing on Preliminary Injunction at 1, filed March 23, 2017 (Doc. 49); Order Staying Case and Continuing Temporary Restraining Orders and Hearing on Preliminary Injunction at 1, filed March 27, 2017 (Doc. 50).

3. **The Motion.**

People's Trust and the NCUA Board filed another Joint Motion to Stay Case and to Continue Temporary Restraining Orders and Hearing on Preliminary Injunction on June 23, 2017, asking the Court again "to vacate the preliminary injunction hearing set for June 28, 2017"; to schedule a new hearing for October 26, 2017; "to stay further proceedings in the case" until the preliminary injunction hearing, and "to continue the Temporary Restraining Orders" until the hearing. Motion at 1. In the Motion, People's Trust contends that a continuance of the TRO is justified, because NCUA -- the other party to the TRO -- has agreed to it, so "neither NCUA nor People's have a need to move forward with the hearing currently set for June 28, 2017." Motion at 2. People's Trust also argues that a stay and continuance is required, because it believes "it is in all parties' best interest to continue negotiating unresolved issues for settlement of this case," and that it believes having the preliminary injunction hearing would jeopardize a global settlement. Motion at 2. Alliant CU refused to join the Motion. See Motion at 2.

4. **The Hearing.**

The Court held a hearing on the Motion on June 26, 2017. See Draft Transcript of Hearing at 2:2 (taken June 26, 2017)(Court)(" Tr.").[2] Alliant CU represented that it opposed the Motion. See Tr. at 8:22-23 (Keleher). The NCUA Board explained that it and People's Trust, which the NCUA Board describes as the primary parties to the TRO, would "like every opportunity to continue to wrap [settlement discussions] up and not have to move forward with th[e] injunction hearing." Tr. at 6:10-12 (Hisey). See id. at 5:4-6:24 (Hisey). The NCUA

---

[2]The Court's citations to the hearing transcript refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

BOARD Board expressed its view that settlement discussions with Alliant CU continues to move forward.  See Tr. at 5:25-6:1-4; id. at 6:16-20 (Hisey).  People's Trust joined the conversation to clarify that it opposes a preliminary injunction hearing, because the Court would base any preliminary injunction on a statute that only the NCUA Board can invoke, and neither the NCUA Board nor People's Trust want the statute invoked.  See Tr. at 6:3-7:21 (Jontz).

The Court tried to assess Alliant CU's interest in the preliminary injunction hearing.  See Tr. at 7:22-25 (Court); id. at 9:5-20 (Court, Keleher).  People's Trust explained its view that Alliant CU had no interest in the TRO or a preliminary injunction hearing, because People's Trust had no reason to proceed with the arbitration now that the NCUA Board and People's Trust had reached an agreement.  See Tr. at 8:1-8 (Jontz).  In the NCUA Board's opinion, Alliant CU should have no interest in a preliminary injunction hearing, because People's Trust has ceased trying to settle the Foreclosure Action on the original terms and Alliant CU would not be a party to the arbitration.  See Tr. at 8:20-9:4 (Hisey).  Alliant CU cited three reasons for holding the hearing: (i) Alliant CU's settlement negotiations have reached an impasse; (ii) the delays in the preliminary injunction hearing frustrate Alliant CU; and (iii) Alliant CU had not known that People's Trust and the NCUA Board had reached a deal.  See Tr. at 9:21-10:15 (Keleher).  Alliant CU took the position that an agreement about the loan could not compromise Alliant CU's collateral without its consent.  See Tr. at 10:25-11:5 (Keleher).  Alliant CU stated that, if the NCUA Board and People's Trust have reached an agreement, Alliant CU wants to see the stipulated preliminary injunction order.  See Tr. at 11:5-11-14 (Keleher).

The Court observed that Alliant CU's main desire is that the other two parties "put together a preliminary injunction rather than continuing to extend the stay, and continue the

temporary restraining orders," and the Court asked the parties if they would be willing to agree to a preliminary injunction order. Tr. at 11:2-13 (Court). People's Trust and the NCUA Board agreed to try to agree to a preliminary injunction order so that a hearing on a preliminary injunction would not be necessary. See Tr. at 16:2-7 (Jontz); id. at 18:13-17 (Hisey); id. at 19:11-13 (Court)("If y'all work out a preliminary injunction then you can submit it and that would take care of the hearing."). The Court subsequently orally denied the Motion, "because there is not an agreement on it," and because Alliant CU has "a right to either have a hearing or get a preliminary injunction in place." Tr. at 18:18-25 (Court). The Court stated that it would hold the preliminary injunction hearing on September 28, 2018, at 8:30 A.M. and that the parties should work to determine how long the hearing would take. See Tr. at 19:18-20:25 (Court, Clerk).

5. **The Agreed Order and Preliminary Injunction.**

The day following the hearing, June 27, 2017, the parties submitted and the Court entered the Agreed Order and Preliminary Injunction at 1-2, filed June 27, 2017 (Doc. 53)("Agreed Order"). The Agreed Order stayed the arbitration in this case. Agreed Order at 1.[3] It also ordered that no party should take any further steps to consummate a settlement of the underlying foreclosure proceeding at issue in the case, and declared that "[n]o further filings of the Court shall be necessary for this Order to automatically expire at the entry of final judgment and/or order in this matter." Agreed Order at 2.[4]

---

[3]The Agreed Order's language tracks the Court's MOO. See MOO at 25, 2016 WL 4491635, at *12.

[4]The Agreed Order's language tracks the Court's MOO. See MOO at 25, 2016 WL 4491635, at *12.

6.     **The Order.**

The Court recorded its Order. In the Order, the Court indicated that it would more fully explain its rationale for its decision. Order at 1 n.1. Accordingly, the Court issues this Memorandum Opinion expanding on its reasoning for the decision in the Order.

## LAW REGARDING REQUESTS FOR A TEMPORARY RESTRAINING ORDER

The requirements for a TRO issuance are essentially the same as those for a preliminary injunction order. See Herrera v. Santa Fe Pub. Sch., 792 F. Supp. 2d 1174, 1181 (D.N.M. 2011)(Browning, J.); 13 Moore's Federal Practice ¶ 65.36(1), at 65-83 (3d ed. 2004). The primary differences between a TRO and a preliminary injunction are that a TRO may issue without notice to the opposing party and that TROs are limited in duration. See Fed. R. Civ. P. 65(b). In both cases, however, injunctive relief is an "extraordinary remedy," and the movant must demonstrate a "clear and unequivocal right" to have a request granted. Leviton Mfg. Co., Inc. v. Nicor, Inc., No. CIV 04-0424 JB/RHS, CIV 04–1295 JB/ACT, 2007 WL 505796, at *3 (D.N.M. Jan. 8, 2007)(Browning, J.)(citing Greater Yellowstone Coal. v. Flowers, 321 F.3d 1250, 1256 (10th Cir. 2003)). See Herrera v. Santa Fe Pub. Sch., 792 F. Supp. 2d at 1181. The Supreme Court of the United States of America and the United States Court of Appeals for the Tenth Circuit have explained that "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981). See Keirnan v. Utah Transit Auth., 339 F.3d 1217, 1220 (10th Cir. 2003)("In issuing a preliminary injunction, a court is primarily attempting to preserve the power to render a meaningful decision on the merits." (internal quotation marks

omitted)(quoting Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc., 805 F.2d 351, 355 (10th Cir. 1986))).

To establish its right to preliminary relief under rule 65(b), a moving party must demonstrate that "immediate and irreparable injury, loss, or damage will result" unless a court issues the order. Fed. R. Civ. P. 65(b). A moving party must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)("Winter")(citing Munaf v. Geren, 553 U.S. 674, 689-90 (2008)); Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987); Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-12 (1982)).

In other words, in determining whether to grant injunctive relief, a court considers the following four factors:

> (i) whether the moving party will suffer irreparable injury unless the injunction issues; (ii) whether there is a substantial likelihood that the moving party will eventually prevail on the merits; (iii) whether the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; and (iv) whether the injunction, if issued, would not be adverse to the public interest.

Herrera v. Santa Fe Pub. Sch., 792 F. Supp. 2d at 1181 (citing Resolution Trust Corp. v. Cruce, 972 F.2d 1195, 1198 (10th Cir. 1992); Fed. Lands Legal Consortium ex rel. Robart Estate v. United States, 195 F.3d 1190, 1194 (10th Cir. 1999)).

The likelihood-of-success and irreparable-harm factors are "the most critical" in the analysis. Nken v. Holder, 556 U.S. 418, 434 (2009). It is insufficient, moreover, that a moving party demonstrate that there is only a "possibility" of either success on the merits or irreparable harm. Diné Citizens Against Ruining Our Env't v. Jewell, 839 F.3d 1276, 1282 (10th Cir.

2016)("Diné"), aff'g No. CIV 15-0209 JB/SCY, 2015 WL 4997207, at *47 n.22 (D.N.M. Aug. 14, 2015)(Browning, J.). In Diné, the Tenth Circuit held that a relaxed test for preliminary relief is "inconsistent with the Supreme Court's recent decision in Winter . . . . ," which "overruled the Ninth Circuit's application of a modified preliminary injunction test under which plaintiffs . . . could receive a preliminary injunction based only on a possibility, rather than a likelihood, of irreparable harm." Diné, 839 F.3d at 1282 (citing Winter, 555 U.S. at 22). The Tenth Circuit concluded that, although the standard overruled in Winter dealt with the irreparable-harm factor, "Winter's rationale seems to apply with equal force" to the likelihood-of-success factor. Diné, 839 F.3d at 1282. Accordingly, the Tenth Circuit held that "any modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible." Diné, 839 F.3d at 1282.

The Court has written several times on the topic of TROs and preliminary injunctions. In O Centro Espirita Beneficiente Uniao Do Vegetal v. Duke, 286 F. Supp. 3d 1239 (D.N.M. 2017)("O Centro")(Browning, J.), the Court issued a preliminary injunction requiring the United States Citizenship and Immigration Service to reconsider the pending I-360 and R-1 visa petitions of a religious minister of the O Centro Espirita Beneficiente Uniao Do De Vegetal Christian spiritualist religious organization ("UDV"). See O Centro, 286 F. Supp. 3d at 1269. The Court issued that relief, in part because it was substantially likely that the USCIS' denial of the minister's R-1 petition violated the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1 ("RFRA"). See O Centro, 286 F. Supp. 3d at 1263-64. USCIS had denied the petition, because the minister made no money and because the minister was not part of an established missionary program. See 286 F. Supp. 3d at 1264. UDV theology precluded its ministers from

making money, and an established missionary program requires that at least one religious worker, at some point, be compensated.  See 286 F. Supp. 3d at 1264.  The Court reasoned, accordingly, that USCIS had substantially burdened the minister's right to exercise his religion, because, in effect, the R-1 petition review required the minister to receive compensation to preach his liturgy in the United States, even though his religion forbade him from making money.  See 286 F. Supp. 3d at 1264.  The minister also met a preliminary injunction's other three prongs, so the Court granted the relief requested.  See 286 F. Supp. 3d at 1265-66.  The Court has also issued a TRO, prohibiting the Santa Fe Public Schools from suspicionless pat-down searches of its students before prom and graduation.  See Herrera v. Santa Fe Pub. Schs., 792 F. Supp. 2d at 1200.  It concluded that: (i) a violation of the Fourth Amendment of the Constitution of the United States "standing alone" constitutes irreparable injury; (ii) suspicionless pat-down searches involving "touching of students' bodies" including "cupping and shaking girls' breasts" were unreasonably and unconstitutionally intrusive, even if those searches were likely effective in apprehending students with drugs, weapons, alcohol, or "distracting contraband"; (iii) the threatened injury outweighed the damage of the TRO; and (iv) the TRO was not adverse to the public, because it would protect other students' constitutional rights who attended prom and graduation.  Herrera v. Santa Fe Pub. Schs., 792 F. Supp. 2d at 1182-99.

## LAW REGARDING PRELIMINARY INJUNCTIONS

"It is well settled that a preliminary injunction is an extraordinary remedy, and that it should not be issued unless the movant's right to relief is clear and unequivocal."  Kikumura v. Hurley, 242 F.3d 950, 955 (10th Cir. 2001)(internal quotation marks omitted).  To show that the

extreme remedy of a preliminary injunction should issue, "[a] party seeking an injunction from a federal court must invariably show that it does not have an adequate remedy at law." N. Cal. Power Agency v. Grace Geothermal Corp., 469 U.S. 1306, 1306 (1984). Before a district court may issue a preliminary injunction pursuant to rule 65 of the Federal Rules of Civil Procedure, the movant must make four showings: (i) that the movant is likely to "suffer irreparable injury unless the injunction issues"; (ii) that "the threatened injury" to the movant if the court does not issue the preliminary injunction "outweighs whatever damage the proposed injunction may cause the opposing party"; (iii) that "the injunction, if issued, would not be adverse to the public interest"; and (iv) that "there is a substantial likelihood [of success] on the merits." Resolution Trust Corp. v. Cruce, 972 F.2d at 1198. See Winter, 555 U.S. at 19 ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." (citing Munaf v. Geren, 553 U.S. at 688-89)). The movant bears the burden of demonstrating all four prongs' satisfaction. See Automated Mktg. Sys., Inc. v. Martin, 467 F.2d 1181, 1183 (10th Cir. 1972). "[A]ny modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible." Diné, 839 F.3d at 1282. "A plaintiff suffers irreparable harm 'when the court would be unable to grant an effective remedy after a full trial because such damages would be inadequate and difficult to ascertain.'" Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp., 778 F. Supp. 2d 1180, 1190 (D.N.M. 2011)(Browning, J.)(quoting Dominion Video Satellite, Inc. v. EchoStar Satellite Corp., 269 F.3d 1149, 1156 (10th Cir. 2001)(citing Kikumura v. Hurley, 242 F.3d at 963)). "Tenth Circuit decisions have linked the 'irreparable

injury' inquiry to the 'likelihood of success' inquiry, holding that a plaintiff who cannot demonstrate a substantial likelihood of success is not entitled to a presumption of irreparable harm." Logan v. Pub. Emps. Ret. Ass'n, 163 F. Supp. 3d 1007, 1030 (D.N.M. 2016)(Browning, J.)(citing Schrier v. Univ. of Colo., 427 F.3d at 1266.

"[T]he limited purpose of a preliminary injunction 'is merely to preserve the relative positions of the parties until a trial on the merits can be held . . . .'" Schrier v. Univ. of Colo., 427 F.3d at 1258 (quoting Univ. of Tex. v. Camenisch, 451 U.S. at 395). In that vein, the Tenth Circuit has identified the following three specifically disfavored preliminary injunctions: (i) "preliminary injunctions that alter the status quo"; (ii) "mandatory preliminary injunctions," meaning injunctions that compel, rather than prohibit, activity on the enjoined party's part; and (iii) "preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." Schrier v. Univ. of Colo., 427 F.3d at 1258 (internal quotation marks omitted)(quoting O Centro, 389 F.3d at 977). Accord Westar Energy, Inc. v. Lake, 552 F.3d 1215, 1224 (10th Cir. 2009)(citing O Centro, 389 F.3d at 975). Regarding mandatory preliminary injunctions, the Court has explained:

> The Tenth Circuit "characterize[s] an injunction as mandatory if the requested relief 'affirmatively require[s] the nonmovant to act in a particular way, and as a result . . . place[s] the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction.'" Schrier v. Univ. of Colorado, 427 F.3d at 1261 (all alterations but first in Schrier v. Univ. of Colo.)(quoting O Centro . . . 389 F.3d at 979). The Tenth Circuit has thus disclaimed -- or at least augmented -- the simpler and more intuitive way of defining these terms, i.e., that a prohibitory injunction is one in which the court orders the enjoined party not to do something, and a mandatory injunction is one in which the court orders the enjoined party to do something.

Salazar v. San Juan Cty. Det. Ctr., No. CV 15-0417 JB/LF, 2016 WL 335447, at *40 (D.N.M. Jan. 15, 2016)(Browning, J.). "When evaluating whether the issuance of a requested injunction

would alter the status quo between the parties, the court should look at 'the reality of the existing status and relationships between the parties, regardless of whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights.'" Salazar v. San Juan Cty. Det. Ctr., 2016 WL 335447, at *40 (quoting SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1100 (10th Cir. 1991), overruled on other grounds by O Centro, 389 F.3d at 975).  "The meaning of this category is self-evident."  Salazar v. San Juan Cty. Det. Ctr., 2016 WL 335447, at *41.  With respect to preliminary injunctions that will change the status quo, "the movant has an even heavier burden of showing that the four factors listed above weigh heavily and compellingly in movant's favor before such an injunction can be issued."  Salt Lake Tribune Publ'g Co. v. AT&T Corp., 320 F.3d 1081, 1099 (10th Cir. 2003)(internal quotation marks omitted)(quoting SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d at 1098-99).

"[I]n an action for money damages, the district court does not have the power to issue a preliminary injunction . . . ."  United States ex rel. Rahman v. Oncology Assocs., 198 F.3d 489, 495-96 (4th Cir. 1999)(citing Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 324-25 (1999)).  See Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418-20 (8th Cir. 1987)(concluding that a preliminary injunction should not issue where a remedy of money damages was available).  Federal courts have the inherent equitable power to issue a preliminary injunction only when it is necessary to protect a movant's entitlement to a final equitable remedy.  See, e.g., De Beers Consol. Mines v. United States, 325 U.S. 212, 219-23 (1945); Reebok Int'l, Ltd. v. Marnatech Enters., Inc., 970 F.2d 552, 559-60 (9th Cir. 1992).

**LAW REGARDING RULE 16 SCHEDULING**

Rule 16(b) of the Federal Rules of Civil Procedure provides: "Except in categories of actions exempted by local rule, the district judge . . . must issue a scheduling order after receiving the parties' report under Rule 26(f) . . . . The scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b). While rule 15 of the Federal Rules of Civil Procedure governs amendments to pleadings generally, rule 16 governs amendments to scheduling orders. See Bylin v. Billings, 568 F.3d 1224, 1230 (10th Cir. 2009)(citing Fed. R. Civ. P. 16(b)). Rule 16(b)(4) states: "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The Advisory Committee Notes to rule 16 explain: "[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension. Since the scheduling order is entered early in the litigation, this standard seems more appropriate than a 'manifest injustice' or 'substantial hardship' test." Fed. R. Civ. P. 16 (advisory committee's notes to 1983 Amendment). Good cause "focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs., No. 02–1146, 2007 U.S. Dist. LEXIS 56492, at *7 (D.N.M. June 5, 2007)(Browning, J.)(internal quotation marks omitted)(quoting Dilmar Oil Co., Inc. v. Federated Mut. Ins., 986 F. Supp. 959, 980 (D.S.C. 1997)(Currie, J.)).

The Tenth Circuit has noted that the "good cause" standard of rule 16 is "an arguably more stringent standard than the standards for amending a pleading under Rule 15." Bylin v. Billings, 568 F.3d at 1230. The Tenth Circuit has also noted, however, that there is a "rough

similarity" between the "good cause" standard in rule 16 and the "undue delay" standard in rule

15. Minter v. Prime Equip. Co., 451 F.3d 1196, 1205 n.4 (10th Cir. 2006). The Tenth Circuit

has stated: "[I]t appears unlikely that applying Rule 16 would lead to a different outcome [than

rule 15], much less prevent a 'manifest injustice.'" Bylin v. Billings, 568 F.3d at 1232. The

Tenth Circuit quoted other appellate courts that have applied rule 16 and have "afforded wide

discretion to district courts' application of that rule." Bylin v. Billings, 568 F.3d at 1231 (citing

United States v. Dang, 488 F.3d 1135, 1143 (9th Cir. 2007)("[T]he district court is given broad

discretion in supervising the pretrial phase of litigation, and its decisions regarding the preclusive

effect of a pretrial order . . . will not be disturbed unless they evidence a clear abuse of

discretion."); Morton Int'l, Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 684 (3d Cir. 2003)("Rule

16 was not intended to function as an inflexible straightjacket on the conduct of litigation.")).

See Scull v. Mgmt. & Training Corp., No. CIV 11-0207 JB/RHS, 2013 WL 1897808 at *5

(D.N.M. April 12, 2013)(Browning, J.)(denying motion to extend under rule 16 because party

did not show good cause after a Stipulated Dismissal released it from the case); Walker v. THI of

N.M. at Hobbs Ctr., 262 F.R.D. 599, 604 (D.N.M. 2009)(Browning, J.((concluding that parties'

"need to acquire additional discovery, to understand the corporate relationships, and to properly

name necessary parties before seeking to amend is a sufficient showing of good cause under rule

16 to grant the requested extension"). See also Lewis v. Goldsberry, No. CIV 11-0283 JB/ACT,

2012 WL 681800, at *5-6 (D.N.M. Feb. 27, 2012)(Browning, J.).

Motions to extend the deadline for expert reports are also considered under the rule 16

"good cause" standard. Conroy v. Schafer, No. 06-0867, 2008 U.S. Dist. LEXIS 39532, at *1-3

(D. Utah May 15, 2008)(Wells, J.)(granting the motion to extend the deadline for expert reports,

because "this case appears to fit the normal pattern found in many civil disputes where despite diligent efforts of both parties deadlines cannot always be met").

**LAW REGARDING GOOD CAUSE AND EXCUSABLE NEGLECT**

The Tenth Circuit has "recognized the interrelation between 'excusable neglect' and 'good cause.'" Pulsecard, Inc. v. Discover Card Servs. Inc., 168 F.R.D. 295, 301 (D. Kan. 1996)(Rushfelt, J.)(citing Broitman v. Kirkland (In re Kirkland), 86 F.3d 172, 175 (10th Cir. 1996)). In Broitman v. Kirkland (In re Kirkland), the Tenth Circuit dealt with the definition of "good cause" in the context of a predecessor to modern rule 4(m) of the Federal Rules of Civil Procedure,[5] and noted:

> [W]ithout attempting a rigid or all-encompassing definition of "good cause," it would appear to require at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of "good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified" is normally required.

86 F.3d at 175 (emphasis in original)(internal quotation marks omitted)(quoting Putnam v. Morris, 833 F.2d 903, 905 (10th Cir. 1987)). The Tenth Circuit explained that Putnam v. Morris

---

[5]Rule 4(m) provides:

> If a defendant is not served within 120 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

Fed. R. Civ. P. 4(m). In Broitman v. Kirkland (In re Kirkland), the Tenth Circuit interpreted rule 4(j), which was largely identical. See 86 F.3d at 174 ("Rule 4(j) requires the court to dismiss a proceeding if service has not been made upon the defendant within 120 days after filing and the party responsible for service cannot show good cause why it was not made.").

"thus recognized that the two standards, although interrelated, are not identical and that 'good cause' requires a greater showing than 'excusable neglect.'" Broitman v. Kirkland (In re Kirkland), 86 F.3d at 175.

In general, the phrases "good cause" and "excusable neglect" are assumed to have the same meaning in various statutory contexts. Courts generally presume that a drafter of a statute intends identical language in statutes with similar purposes to have the same meaning. See Merrill Lynch, Pierce, Fenner & Smith v. Dabit, 547 U.S. 71, 85-86 (2006)(Stevens, J.). Moreover, "[t]he rules of statutory construction apply to the Federal Rules." In re Kubler, No. MC 11-0048 JB, 2012 WL 394680, at *11 (D.N.M. 2012)(Browning, J.). Accord Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)(applying the *expressio unius est exclusio alterius* canon to interpret rule 9(b) of the Federal Rules of Civil Procedure); Hillis v. Heineman, 626 F.3d 1014, 1017-18 (9th Cir. 2010)("This same principle of statutory construction applies to interpreting the Federal Rules of Civil Procedure."). The Court, for example, has relied upon the meaning of "good cause" under rule 16 of the Federal Rules of Civil Procedure -- which concerns amendments of scheduling orders -- when interpreting "good cause" under rule 32 of the Federal Rules of Criminal Procedure -- which concerns criminal sentencing and judgment. United States v. Jones, No. CR 14-0769 JB, 2016 U.S. Dist. LEXIS 9938, at *8-11 (D.N.M. 2016)(Browning, J.).

In the civil rule 16 context, the Court has stated that the good-cause inquiry focuses on the diligence of the party seeking to amend a scheduling deadline. See Walker v. THI of N.M. at Hobbs Ctr., 262 F.R.D. at 602-03; Guidance Endodontics, LLC v. Dentsply Int'l, Inc., No. CIV 08-1101 JB/RLP, 2009 WL 3672505, at *2-3 (D.N.M. 2009)(Browning, J.); Trujillo v. Bd. of

Educ. of the Albuquerque Pub. Schs., Nos. CIV 02-1146 JB/LFG, CIV 03-1185 JB/LFG, 2007 WL 2296955, at *3 (D.N.M. 2007)(Browning, J.). The Court has concluded that, "[p]roperly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." Advanced Optics Elecs., Inc. v. Robins, 769 F. Supp. 2d 1285, 1313 (D.N.M. 2010)(Browning, J.). Accord Gerald v. Locksley, No. CIV 10-0721 JB/LFG, 2011 WL 3510845, at *13-14 (D.N.M. 2011)(Browning, J.). Thus, "the moving party [must] show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay." Minter v. Prime Equip. Co., 451 F.3d at 1205 n.4.

Where a party is diligent in its discovery efforts and nevertheless cannot comply with the scheduling order, the Court has found good cause to modify the scheduling order if the requesting party timely brings forward its request. For example, in Advanced Optics Electronics, Incorporated. v. Robins, the Court found that, where the defendant did not conduct discovery or make any good-faith discovery requests, and where the defendant did not make efforts "diligent or otherwise" to conduct discovery, the defendant did not show good cause to modify the scheduling order. 769 F. Supp. 2d at 1313 n.8. By contrast, in Street v. Curry Board of County Commissioners, No. CIV 06-0776 JB/KBM, 2008 WL 2397671 (D.N.M. 2008)(Browning, J.), the Court found that the plaintiff had "shown good cause for a delay in seeking leave to amend," because she "was diligent in pursuing discovery . . . [and] brought to the Court's attention her identification of an additional claim in a timely manner," where she discovered the claim through "documents provided in discovery." 2008 WL 2397671, at *11. The Court arrived at a similar determination in Abraham v. WPX Production, LLC, No. CIV 06-0776 JB/KBM, 2016 WL 548251 (D.N.M. 2016)(Browning, J.). There, the Court found good cause to amend a pleading

when the plaintiffs had a very short amount of time to amend the pleadings, "even though discovery had only just begun." 2016 WL 548251, at *20. "The Plaintiffs may not have obtained or reviewed all of the documents that might reveal their conspiracy claim's existence before the deadline to amend passed." 2016 WL 548251, at *20. Furthermore, the delay was minimal and would not prejudice the defendants. See 2016 WL 548251, at *20.

Overall, good cause requires diligence and a conscientious attempt to comply with the Court's scheduling order. When parties have not done so, the Court has not found good cause. In Montoya v. Sheldon, No. CIV 10-0360 JB/WDS, 2012 WL 5353493 (D.N.M. 2012)(Browning, J.), the Court did not find good cause to modify the scheduling order and reopen discovery where the plaintiffs' excuse for not disclosing their expert before the close of discovery was that they thought the case would settle and they would thus not require expert testimony. See 2012 WL 5353493, at *14. The Court noted:

> The [plaintiffs] filed this case on April 15, 2010. Because [Plaintiff] D. Montoya had seen the physician before that date, the fact that the [plaintiffs] are only now bringing the physician forward as a newly identified expert witness, over two years later, and over one and a half years after the deadline to disclose expert witnesses, does not evidence circumstances in which the Court can find excusable neglect nor good cause.

2012 WL 5353493, at *14.

The Tenth Circuit has previously considered the meaning of "excusable neglect" in the context of relief from a final judgment, order, or proceeding under rule 60(b) of the Federal Rules of Civil Procedure. United States v. Timers Pres., 999 F.2d 452, 454 (10th Cir. 1993). "[T]hree requirements . . . must be met when setting aside a default judgment under Rule 60(b): (1) the moving party's culpable conduct did not cause the default; (2) the moving party has a meritorious defense; and (3) the non-moving party will not be prejudiced by setting aside the

judgment." United States v. Timers Preserve, 999 F.2d at 454 (citations omitted). In determining whether a party's neglect is excusable, the question

> is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Relevant factors include "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

Jennings v. Rivers, 394 F.3d 850, 856-57 (10th Cir. 2005)(quoting Pioneer Inv. Servs. Co. v. Brunswich Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993)("Pioneer")). In this context, as in others, the Tenth Circuit has stated that the reason for delay is an important, if not the most important, factor in this analysis. See Hamilton v. Water Whole Int'l Corp., 302 F. App'x 789, 798 (10th Cir. 2008)(unpublished)(citing United States v. Torres, 372 F.3d 1159, 1163 (10th Cir. 2004)(analyzing the excusable neglect standard in the context of rule 4(b)(4) of the Federal Rules of Appellate Procedure, where the party filed an untimely notice of appeal)).[6]

The relevant factors that the Tenth Circuit used in Jennings v. Rivers with regard to 60(b)(1) have been used to determine whether excusable neglect exists in a number of other

---

[6]Hamilton v. Water Whole International Corporation is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . [a]nd we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court finds that Hamilton v. Water Whole International Corporation has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion.

contexts.  See Pioneer, 507 U.S. at 395 (discussing application of the excusable neglect standard to Fed. R. Bankr. P.R. 9006(b)(1)); Broitman v. Kirkland (In re Kirkland), 86 F.3d at 175 (concluding that in Pioneer "the Supreme Court relied upon use of the term 'excusable neglect' in a broad sense in Rules 6(b), 13(f), 60(b)(1), and 60(b)(6)," but that the Pioneer factors did not apply to the "good cause" standard under rule 4(j)); City of Chanute v. Williams Nat. Gas Co., 31 F.3d 1041, 1046 (10th Cir. 1994)("Thus, we apply the Pioneer test for 'excusable neglect' under Fed. R. App. P. 4(a)(5)."); United States v. Torres, 372 F.3d at 1162 ("We now likewise conclude that the Supreme Court's construction of 'excusable neglect' in Pioneer also applies to the term 'excusable neglect' as it is used in Federal Rule of Appellate Procedure 4(b)(4)."). Deliberate tactics do not create excusable neglect; "'[e]xcusable litigation mistakes are not those which were the result of a deliberate and counseled decision by the complaining party . . . . ;' rather, they are the 'kinds of mistakes that a party could not have protected against.'" Thompson v. THI of N.M. at Casa Arena, No. CIV 05-1331 JB/LCS, 2008 WL 5999653, at *18 (D.N.M. 2008)(Browning, J.)(quoting Yapp v. Excel Corp., 186 F.3d 1222, 1222 (10th Cir. 1999)).

The Court has applied the Pioneer factors to find that a party demonstrated excusable neglect when its attorney failed to respond to a motion for summary judgment, because its attorney mistakenly thought that the Court's vacating a scheduling order meant there was no deadline for filing responsive pleadings.  See Estate of Anderson v. Denny's, Inc., No. CIV 12-0605 JB/GBW, 2013 WL 690809, at *13-14 (D.N.M. 2013)(Browning, J.).  The Court noted that the attorney's failure to file a responsive pleading was not unintentional, as the attorneys' misunderstanding of local court rules caused him to think that he did not need to respond.  See 2013 WL 690809, at *14.  The Court also noted that the attorney was honest with his reason for

not filing, as he did not make up an excuse of catastrophic circumstances precluding him from responding.  See 2013 WL 690809, at *14.  The Court recognized that granting the party leave to file a late response was "generous," and that the attorney's failure to respond was "barely excusable."  2013 WL 690809, at *14.  The Court also explained that it is bound by Tenth Circuit precedent requiring the Court to determine motions for summary judgment on their merits, rather than granting such motions for procedural defaults.  See 2013 WL 690809, at *14 (citing Reed v. Bennett, 312 F.3d 1190, 1196 (10th Cir. 2002)).  The Court also found that the prejudice to the party requesting summary judgment was little, as the only costs the party would incur are those it would also have incurred had the attorney timely responded.  See Estate of Anderson v. Denny's, Inc., 2013 WL 690809, at *14-15.

By contrast, the Court has denied a plaintiff's request for an extension of time to name an expert witness against a defendant, when the plaintiff asserted that he had waited to name an expert witness until a second defendant joined the case, because, before the second defendant entered the case, a scheduling order was in effect, and the plaintiff should have known that he would need to name an expert witness against the defendant already in the case.  See Scull v. Mgmt. & Training Corp., No. CIV 11-0207 JB/RHS, 2012 WL 1596962, at *8 (D.N.M. May 2, 2012)(Browning, J.).  The Court stated that the plaintiff was seeking "relief from his own disregard" for the deadline.  2012 WL 1596962, at *8.  "Despite his knowledge that [Defendant] PNA had yet to enter the case, [Plaintiff] Scull chose to allow the deadline to pass without naming expert witnesses against [Defendant] MTC."  2012 WL 1596962, at *8.  Regarding the defendant who entered the case at a later date, however, the Court allowed the plaintiff an extension of time to name an expert witness, as it "was not unreasonable for Scull to expect a

new deadline to name expert witnesses upon PNA's entrance into the case because he had not yet had the opportunity to engage in discovery against PNA as he had against MTC."  2012 WL 1596962, at *9.  The Court also noted that not naming an expert witness "is a high price to pay for missing a deadline that was arguably unrealistic when it was set," as Scull could not have determined the need for an expert witness until after PNA entered the case.  2012 WL 1596962, at *9.

In <u>Stark-Romero v. Nat'l R.R. Passenger Co (AMTRAK)</u>, 275 F.R.D. 544 (D.N.M. 2011)(Browning, J.), the Court found that a lawyer had shown excusable neglect when his reason for missing a scheduling deadline was that soon after his son's wedding, his father-in-law developed a tumor in his chest, the lawyer arranged his father-in-law's medical care, and only after the lawyer returned to his work did he realize that a deadline passed.  <u>See</u> 275 F.R.D. at 549-50.  The Court noted that the lawyer could have avoided missing the deadline had he not left his work until the last minute, just before his son's wedding, but found that the lawyer had demonstrated good faith and missed the deadline because of "life crises," and not his own inadvertence.  275 F.R.D. at 549-50.  On the other hand, in <u>Liles v. Washington Tru Solutions, LLC</u>, No. CIV 06–854 JB/CEG, 2007 WL 2298440 (D.N.M. June 13, 2007)(Browning, J.), the Court denied a plaintiff's request for additional time to respond to a defendant's motion for summary judgment, when the plaintiff's only rationale was that its counsel's "family and medical emergencies" -- without further explanation -- precluded the plaintiff from timely responding.  2007 WL 2298440, at *2.

## ANALYSIS

The Court concludes that, under rule 65, its oral ruling remains correct that Alliant CU has a right to a preliminary injunction hearing or, at least, need not agree to extend deadlines, so the Court properly denied the Motion, because Alliant CU does not agree to the relief requested.[7] See Fed. R. Civ. P. 65. Although the Federal Rules of Civil Procedure do not explicitly mandate a hearing, they suggest that a preliminary injunction hearing is proper as a matter of course when a court considers a preliminary injunction motion, as does Supreme Court precedent. For example, rule 65(b)(3) notes that, if the Court issues a preliminary injunction without notice, a "hearing <u>must</u> be set at the earliest possible time." Fed. R. Civ. P. 65(b)(3) (emphasis added). The Supreme Court has also noted that preliminary injunctions are "customarily granted on the basis of procedures that are less formal and evidence that is less complete than a trial on the merits," which suggests that hearings, albeit hearings less formal than a trial, are expected when a court rules on a preliminary injunction motion. <u>Univ. of Tex. v. Camenisch</u>, 451 U.S. 390, 395 (1981). <u>See</u> <u>Att'y Gen of Okla. v. Tyson Foods, Inc.</u>, 565 F.3d 769, 776 (10th Cir. 2009)("[P]reliminary injunctions are customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."). Even if Alliant CU does not, however, have a right to a preliminary injunction hearing, it need not agree to extending previously agreed deadlines for a preliminary injunction hearing, and the Court has the power to deny a schedule modification. <u>See</u> Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). The Court, accordingly, denied the Motion.

---

[7]The Court notes, however, that the Agreed Order substantially grants the relief that the Motion requests in that the Agreed Order stays the proceedings, and continues the TRO until final judgment is entered, allowing the parties to continue settlement negotiations. <u>See</u> Agreed Order ¶¶ 1-2, at 1-2.

UNITED STATES DISTRICT JUDGE

Counsel:

John P. Burton
Charles Hughson
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Santa Fe, New Mexico

--and--

Dennis E. Jontz
Ryan M. Walters
Lewis Roca Rothgerber Christie, LLP
Albuquerque, New Mexico

      *Attorneys for Plaintiff/Counterdefendant*

Mark A. Glenn
Moses, Dunn, Farmer & Tuthill, P.C.
Albuquerque, New Mexico

--and--

Simon W. Hendershot, III
Christy L. Martin
Benjamin L. Hisey
Kerr, Hendershot & Cannon, P.C.
Houston, Texas

      *Attorneys for Defendant/Counterclaimant*

William R. Keleher
Tax, Estate & Business Law, Ltd.
Albuquerque, New Mexico

      *Attorney for the Intervenor*